UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA FORT MYERS DIVISION

Roberto Agustin Diaz III,
Plaintiff,

2:25-CV-856-SPC-DNF

V.

Retail Services & Systems, Inc. d/b/a Total Wine & More,
and/or Florida Fine Wine & Spirits, LLC d/b/a Total Wine & More,
Defendant(s).
Case NO.: _____

COMPLAINT

Plaintiff, Roberto Agustin Diaz III, by and through himself, sues Defendant, Retail Services & Systems, Inc. d/b/a Total Wine & More and/or Florida Fine Wine & Spirits, LLC d/b/a Total Wine & More, and alleges as follows:

JURISDICTION AND VENUE

This action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), and related state law claims.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343, as this action arises under federal law.

The Court has supplemental jurisdiction over Plaintiff's state law negligence claims pursuant to 28 U.S.C. § 1367.

Venue is proper in this District under 28 U.S.C. § 1391 because the unlawful employment practices occurred in Collier County, Florida, within this judicial district.

PARTIES

Plaintiff, Roberto Agustin Diaz III, is a resident of Collier County, Florida, and at all relevant times was employed by Defendant at its Naples, Florida location.

Defendant Retail Services & Systems, Inc. d/b/a Total Wine & More ("Retail Services") is, upon information and belief, a Delaware corporation authorized to do business in Florida. Retail Services is part of the corporate structure operating the "Total Wine & More" retail stores nationwide.

Defendant Florida Fine Wine & Spirits, LLC d/b/a Total Wine & More ("Florida Fine Wine") is, upon information and belief, a Florida limited liability company authorized to do business in Florida. Florida Fine Wine is also part of the corporate structure operating "Total Wine & More" stores, including Store #908 in Naples, Florida.

Plaintiff was employed at the Naples, Florida location of "Total Wine & More," and at all times relevant, either or both Defendants employed Plaintiff within the meaning of the ADA and Florida law. Plaintiff names both entities to ensure the correct employing party is identified and held responsible. Plaintiff seeks relief only from the entity that actually employed him.

Defendant is a nationwide retailer operating under the name Total Wine & More, that actively employs more than 15 employees at the store level, as well as thousands of employees nationwide, and is an "employer" within the meaning of the ADA.

FACTUAL BACKGROUND

Plaintiff began working for Defendant in November, 2023 at a rate of $18.00 per hour, this was increased to a rate of $18.50 per hour in August, 2024 following a positive performance review.

Plaintiff's job duties with Defendant involved a hefty amount of carrying and lifting, including overhead lifting, boxes up to about 54 pounds. Pushing/Pulling around 1000 pounds of merchandise at a time. Frequent climbing, bending, kneeling, twisting, and walking (estimated about 5 miles daily based on step tracking).

On May 20, 2024, Plaintiff sustained a work-related injury while performing his job duties. Plaintiff immediately notified his manager of the injury but was instructed to continue working despite his condition.

On May 21, 2024, Plaintiff again reported his injury and inability to perform certain duties safely to the management team. Management again required him to continue working, disregarding his health and safety.

On May 24, 2024, Plaintiff contacted store manager, Ricky Collins, to report his injury was going to keep him from working for some days, stating "struggling to walk or do basic movements" Ricky Collins acknowledged these messages, and Plaintiff stayed in contact through text and phone call.

On May 30, 2024, Plaintiff returned to work after pressure from management to come back during phone calls. Plaintiff reiterated, he was not fully healed, and still in severe pain. About one hour into the shift, Plaintiff stated he was in too much pain and needed to go home. Management told Plaintiff to keep working until someone else could fill in for the role hours later.

On May 31, 2024, Plaintiff returned to work as instructed by the management team again reiterating the severity of his injury. Plaintiff was told to keep working, around half an hour into his shift, Plaintiff was having extreme difficulty walking and sat down. One of the assistant managers finally mentioned to Plaintiff that he could go get checked out by workers' compensation.

Plaintiff subsequently filed a workers' compensation claim and received treatment under the Florida Department of Workers' Compensation system.

Plaintiff remained under medical restrictions and was not formally cleared by the Florida Department of Workers' Compensation to return to work under light duty until January 28, 2025, as documented in EEOC filing.

Despite this, Defendant began threatening Plaintiff with termination as early as November 2024, claiming he needed to return to work at his previous role despite

restrictions. Plaintiff reported one such threat to Human Resources, but HR dismissed his concerns.

Plaintiff, since the workers' compensation process began, continually asked for a chair accommodation and/or reassignment, as reasonable means to continue working per 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii); EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship (2002) for several months following the injury to perform other duties in the store, and suggested roles that he could perform outside of Plaintiff's normally physically demanding work. The chair and transfer accommodations were reasonable accommodation requests under ADA standards, that would not have caused undue hardship upon the Defendant. Defendant however, stated they do not believe in use of chairs in the workplace, and denied all requests.

Defendant would occasionally make requests of Plaintiff to return to work at full duty in his previous physically demanding role, citing an unknown third party doctor had allegedly cleared Plaintiff to return.

On January 24, 2025, Plaintiff was contacted by Defendant and provided somewhat vague return to work instructions that reasonably appeared to communicate February 4th, as a return to work date. From this point through to February, Plaintiff was blocked from accessing the Defendant's online scheduling platform.

On January 26, 2025, Plaintiff was contacted by a team member who Plaintiff reasonably believed to be a supervisor for Total Wine, asking if Plaintiff intended to return to work as directed by management, Plaintiff confirmed, and was also informed that allegedly the management team had started a gambling pool on whether or not he would return to work, making a game out of Plaintiff's disability.

On February 3, 2025, Defendant terminated Plaintiff, citing Plaintiff no call no showed to return to work, a day prior to when Plaintiff was actually instructed to return, and claimed Plaintiff was refusing to return.

Plaintiff and his colleagues had, in fact, made efforts to seek ways he could be accommodated back, but were constantly denied. Plaintiff in good faith, showed up for seated computer training in July when asked, as well as for a performance review in August. Plaintiff had also followed Defendant's return-to-work instructions and reported

for duty on February 4, 2025, only to be told he had already been terminated the previous day. Defendant falsely claimed plaintiff misunderstood the instructions and was intended to return on January 28th, 2025, which was not communicated to Plaintiff.

Plaintiff then timely filed a Charge of Discrimination with the EEOC, which issued a Notice of Right to Sue on June 30, 2025 (attached hereto as Exhibit A).

Defendant's position is further contradicted by inaccurate and misleading claims made in its EEOC response, including incorrect employment dates, false statements about Plaintiff's presence and health at the workplace, false stories that plaintiff was placed on light duty and allegedly rejected it, mischaracterizations of his work duties, and false claims that Plaintiff did not report injury until 11 days later, on May 31, 2024, despite there being records of communications prior, and Plaintiff being forced to participate in 4 shifts before being informed of his workers' compensation rights.

In its position statement to the EEOC, Defendant asserted: "Mr. Diaz returned to the store for another 5-hour shift three days later on July 18, 2024, during which he had additional online computer training and performed light duty tasks, including greeting customers, offering them samples to taste, and talking to them about featured products. There was no lifting, bending, or otherwise physically demanding aspect of this light duty work. Mr. Diaz did not complain during his shift, however, after his shift was over, he expressed to ASM Summers that he did not like working as a greeter because it was not what he was hired to do." This statement is false. Plaintiff was brought in for online training only during this time and was told it would only be for a few days, and that Defendant had no intention of giving him any more hours on the schedule outside the computer training. Plaintiff was never assigned to perform light duty assignments such as greeting customers, offering samples, or engaging in promotional sales work. Plaintiff never told ASM Summers, or any other manager, that he disliked light duty work. There is no record of Plaintiff ever offering samples or working as a greeter. Instead, Plaintiff consistently requested reasonable accommodations to remain on site following the computer training, including seated work and transfers to other roles but Defendant denied these requests. Defendant's false assertions in its EEOC response misrepresent the factual record and are further evidence of pretext for its unlawful discrimination and termination of Plaintiff.

CLAIMS FOR RELIEF

Count I – Disability Discrimination (ADA)

- Plaintiff incorporates by reference the allegations set forth above.

- Plaintiff was a qualified individual with a disability within the meaning of the ADA.

- Plaintiff was able to perform the essential functions of multiple vacant positions at Total Wine & More with or without reasonable accommodation, including the use of a chair for seated work. Defendant failed to provide such reasonable accommodation, in violation of previously mentioned 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii); EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship (2002)

- Defendant discriminated against Plaintiff by failing to provide reasonable accommodations and by terminating him because of his disability.

- As a result, Plaintiff has suffered lost wages, emotional distress, and other damages.

Count II – Retaliation (ADA and Florida Law)

- Plaintiff incorporates by reference the allegations set forth above.

- Plaintiff engaged in protected activity by reporting his injury, filing for workers' compensation, requesting reasonable accommodations, and filling complaints with human resources when threatened.

- Defendant retaliated against Plaintiff by threatening him with termination, denying reasonable accommodation requests, disregarding his HR complaint, and ultimately firing him.

- These actions constitute unlawful retaliation under the ADA and Florida Statutes § 440.205, as well as U.S.C. § 12112

Count III – Wrongful Termination in Violation of Public Policy

- Plaintiff incorporates by reference the allegations set forth above.

- Defendant wrongfully terminated Plaintiff for exercising his rights under Florida's workers' compensation laws and in violation of public policy protecting injured workers violating Florida Statutes § 440.205

Count IV – Gross Negligence

- Plaintiff incorporates by reference the allegations set forth above.

- Defendant had actual knowledge of Plaintiff's injury on May 20, 2024, when he explicitly reported it to management multiple times. Defendant was fully aware of Plaintiff's severe pain and suffering from the date of injury, withholding information about workers' compensation, and forcing Plaintiff to work through May 31, 2024, when his injury had exacerbated to the point where Plaintiff was fully incapacitated, only then did Defendant finally provide information about workers compensation.

- Despite this knowledge, Defendant willfully required Plaintiff to continue working several shifts, showing a reckless conscious disregard for his health and safety, constituting gross negligence under Fla. Stat. § 768.72(2)(b).

- As a direct and proximate result of Defendant's grossly negligent conduct. Defendant cruelly forced Plaintiff to injure himself further. Plaintiff has suffered and continues to suffer damages including but not limited to lost wages, lost employment opportunities, emotional distress, mental anguish, humiliation, pain and suffering, and loss of enjoyment of life. Plaintiff is entitled to compensatory and punitive damages as allowed under Florida common law and Florida Statutes Chapter 768. Plaintiff is also entitled to punitive damages under Fla. Stat. § 768.72.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award:

A. Back pay, for any lost wages and benefits, reduced by any amounts received under workers' compensation benefits;

B. Front pay, representing lost future wages at employees final pay rate of $18.50 an hour;

C. Compensatory damages for emotional distress, inconvenience, and loss of enjoyment of life, including damages arising from Defendant's grossly negligent conduct of forcing an injured employee to work;

D. Punitive damages where permitted by law;

E. Attorneys' fees and costs, recoverable under 42 U.S.C § 12205;

F. Pre- and post-judgment interest; and

G. Such other relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
Roberto Agusting Diaz III, Pro Se Plaintiff
7081 Lone Oak Blvd
Naples, FL 34109
571-606-5030
DinoaDiaz@AOL.com