UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERTO AGUSTIN DIAZ III,

    Plaintiff,

v.                                                                     Case No. 2:25-cv-856-SPC-KRH

RETAIL SERVICES & SYSTEMS,
INC. d/b/a Total Wine and More,
and FLORIDA FINE WINE &
SPIRITS, LLC d/b/a Total Wine and
More,

    Defendants.
_____/

**ORDER**

At issue is Plaintiff's Time-Sensitive Motion for Protective Order and to Quash or Modify Defendants' Nonparty Medical Subpoenas. (Doc. 26). Defendants responded in opposition. (Doc. 28). And Plaintiff replied. (Doc. 32). The Court denies the Motion.[1]

The parties dispute the scope and breadth of subpoenas that seemingly were drafted yet never served. So right off the bat, the request to quash appears premature. Nor has the Court been provided a copy of the challenged subpoenas (whether draft or otherwise). This matter will therefore be considered as a request for a protective order, not a motion to quash or modify a possible, unserved, and abstract subpoena.

_____

[1] Unrelated to the merits of this ruling, the Court reminds Plaintiff to review Local Rule 1.08(a). That Rule sets out the typography requirements for all filings.

## Legal Standard

If a movant shows good cause, a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden rests with the moving party. *See id.*; *see also Stansell v. Revolutionary Armed Forces of Col.*, 120 F.4th 754, 766 (11th Cir. 2024).

"Good cause usually requires a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Stansell*, 120 F.4th at 766. This is a flexible standard that weighs "the nature and character of the information sought" with "the balance of the factual issues involved in each action." 8A Wright & Miller's Federal Practice & Procedure § 2035 (3d ed. Apr. 2026 update) (citation omitted). In general, relevance and proportionality principles help guide this analysis too. *E.g.*, *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 588-89 (M.D. Fla. 2016); *Rep. of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 406 (S.D.N.Y. 2018). But in the end, good cause "generally signifies a sound basis or legitimate need to take judicial action." *In re: Chiquita Brands Int'l*, 965 F.3d 1238, 1251 (11th Cir. 2020) (citation omitted).

## Discussion

The Motion fails for three interrelated reasons: (1) Plaintiff does not show good cause; (2) the information is relevant; and (3) discovery is proportionate. Related to the merits are a few tangential matters. And while the Motion fails, so

2

too does Defendants' request for fees. The Court takes each in turn.

## A.    Good Cause

Plaintiff alleges low-back injuries caused by his work. Going a step further, he extrapolates that injury claim as creating a disability to support theories of employment discrimination and retaliation. In short, the status and nature of issues with Plaintiff's lumbar spine are at the core of this action.

Unsurprisingly, Defendants want comprehensive discovery of Plaintiff's medical records. They seek those records in the possession of Plaintiff's two disclosed treating doctors. To demand that information, Defendants used what appear to be common phrases for document subpoenas on treaters in personal injury cases. [2] Nothing about this stands out as overbroad, oppressive, or burdensome discovery.

To his credit, Plaintiff contends that the apparently boilerplate language in Defendants' planned subpoenas is far-reaching. Lawyers are worrywarts by trade, often drafting discovery with terms of expansion like "any and all records." This can spawn valid overbreadth concerns. Where Plaintiff runs into a burden wall, however, is in the context of these subpoenas. They were only directed at the two treating doctors whom Plaintiff disclosed as witnesses with knowledge, information, and opinions about the disputed medical issues. These doctors specialize in neurosurgery and pain management—i.e., the precise specialties that

---

[2] Again, Plaintiff did not provide the actual subpoenas to review. So the Court's understanding is based on quotations in the briefing.

would have crucial medical records to understand Plaintiff's lumbar spine problems. There was no effort to show that these doctors possess some trove of information from the treatment of unrelated medical conditions. Rather, it seems that any information these doctors possess would relate to their treatment of Plaintiff for the injuries alleged. So Plaintiff failed to establish particular, specific facts showing the need for a protective order. *See Stansell*, 120 F.4th at 766.

Buttressing the lack of facial good cause are relevance and proportionality.

The Court wastes little breath on relevance. Defendants seek medical records from the two treating doctors whom Plaintiff disclosed. Given the way Plaintiff identified those doctors—including topics that wander into hypotheticals—he likely plans to use them as nonretained experts later. *See* Fed. R. Civ. P. 26(a)(2)(C); *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-18 (11th Cir. 2011) (If "a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony.").[3] It is undoubtedly relevant to request all medical records possessed by Plaintiff's disclosed treating doctors in a case where he alleges physical and mental injuries. This reality is more pronounced where (as here) Defendants seek a complete medical history necessary for their retained experts to render reliable

---

[3] The Court understands Plaintiff disclaimed using these doctors as "retained" experts right now. (Doc. 28 at 15-16). But they are disclosed as treating physicians who will opine on "Prognosis and expected ongoing functional limitations." (Doc. 28 at 15-16). Those doctors could only offer such testimony as nonretained experts. *See* Fed. R. Civ. P. 26(a)(2)(C). What's more, the disclosed topics likely include opinions on the cause of injuries. Again, considering the facts, that is expert testimony.

opinions to rebut the treaters in question.

The medical records directly related to the injuries at issue are discoverable. Even Plaintiff concedes as much. As Defendants point out though, the facts of this action further demonstrate the need for more information. Anyone who has ever litigated a PI case would understand that the extended scope of what Defendants seek is more than fair game. Among other theories, Plaintiff alleges his low-back injury was causally related to his working conditions. A spine degenerates over time; but an individual's lifestyle, history, and medical conditions play a large role in that otherwise natural process. And spines are tricky things with injuries that can manifest in nonlinear ways (at least to nondoctors). For example, someone may experience toe numbness from a lumbar issue that doesn't present other symptoms. Dermatomes explain this phenomenon. So in the context of spine injury cases, seemingly unrelated medical records—both before and after directly relevant treatment—often become essential for determining injury etiology.

In short, Defendants pursue a natural course of discovery in this type of case. They do so via relevant documents. Like relevance, proportionality is an easy call.

Discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality review balances a series of factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

On top of other damages, Plaintiff seeks almost $2.4 million in damages for physical pain and suffering, loss of enjoyment of life, emotional distress, humiliation, and loss of future earnings. (Doc. 28 at 23-26). In large part, these damages allegedly stem from low-back injuries. As described above, the information sought is highly relevant and important to the dispute. Doctors in Florida regularly respond to the subpoena requests apparently at issue. And by subpoenaing the records directly from Plaintiff's providers, it is Defendants—not Plaintiff—who will bear the doctors' reasonable costs of compliance. Those costs would pale in comparison to the significant damages Plaintiff seeks.

The contemplated discovery is therefore proportionate.

As detailed above, Plaintiff failed to show good cause for a protective order. So the Motion is denied. And Defendants may proceed with the subpoenas if they choose.

**B.  Related Matters**

In the hope of avoiding future disagreement, three other issues addressed in the briefing are worth mentioning.

First, the parties seem to agree on a HIPAA protective order—which would shield Plaintiff's medical records for use in this case. The Court would likely enter that order if the parties ask. *See* (Doc. 3 at 4-5). It would not, however, entertain the contemplated in camera review. Once more, we aren't talking about especially far-flung yet sensitive matters like psychiatric or gynecological treatment. There is just no basis here for having a judge pore through records and examine how a

6

neuro treated something like disc herniation.

Second, Defendants flag a potential dispute over whether Plaintiff must sign a HIPAA release to effectuate the subpoenas. A release wasn't presented. Nor will the Court decide hypothetical questions before they become an issue. In stating so, however, the Court notes that the parties should be able to resolve this on their own. The Court provided its ruling on the discovery matter. It is up to the parties now to proceed without Court intervention on mechanics. But if needed, Defendants can seek specific releases by order later. *See Sheets v. Presseller*, No. 2:24-cv-495-JLB-KCD, 2025 WL 1002177, at *5 (M.D. Fla. Apr. 3, 2025) ("Under the HIPAA regulations, healthcare providers may produce records containing otherwise protected health information in response to subpoenas accompanied by a court order authorizing them to do so.").

And third, Plaintiff raises generalized concerns about privilege without identifying what could be protected. The Court does not make privilege determinations in the abstract. Middle District Discovery (2021) at Section VI.A.1. (The party declaring privilege "must assert the claim expressly and must describe the nature of the documents, communications, or things not produced or disclosed, such that, without revealing the privileged or protected information itself, the description will enable other parties to assess the applicability of the privilege or protection."). Given that Plaintiff is pro se, it is unclear how any attorney-client or work-product privileged documents could be found in his medical records. Rather, this reads again as a standard provision in a PI

subpoena—where communications between treating doctors and PI firms are fertile ground for discovery fights. But this doesn't appear to be the question here.

With those matters handled, there is one last issue.

## C.    Fees and Expenses

Rule 26(c)(3) incorporates Rule 37(a)(5) into overprotective orders. After denying a motion, courts must impose an award of reasonable fees and expenses on the losing party. Fed. R. Civ. P. 37(a)(5). But they cannot issue that sanction if motions were "substantially justified" or sanctions are otherwise "unjust" based on the circumstances. *Id.*

Before receiving these sanctions, a party must have "an opportunity to be heard." Fed. R. Civ. P. 37(a)(5)(B). That said, the "opportunity" can be either "written submissions," "oral hearings," or both. Fed. R. Civ. P. 37(a)(5)(B) advisory committee's note to 1993 amendment.

On the facts here, the Court finds Plaintiff's opposition substantially justified or (at least) an award unjust. While the Court disagrees with Plaintiff on this issue, he is a pro se party who presented a cogent argument in support of his position. The Court sees no basis to impose sanctions at this time over a mere disagreement on the scope of allowable discovery.

**ORDERED**:

Plaintiff's Time-Sensitive Motion for Protective Order and to Quash or Modify Defendants' Nonparty Medical Subpoenas (Doc. 26) is **DENIED**.

In Fort Myers, Florida on May 27, 2026.

_____
Kevin R. Huguelet
United States Magistrate Judge

Copies furnished to:

Unrepresented parties

9